# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

JASON H.[1]

          Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

          Defendant.

Case No. 6:21-cv-1118-SI

**OPINION AND ORDER**

Kevin Kerr, KERR ROBICHAUX & CARROLL, P.O. Box 11490, Portland, OR 97293. Of Attorneys for Plaintiff.

Scott Erik Asphaug, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Jason H. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under the Social Security Act (Act). For the reasons explained below, the Court **REVERSES** the decision of the Administrative Law Judge and **REMANDS** for an immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff protectively filed for SSI on August 24, 2015, claiming a disability onset date of August 18, 2013. AR 160-61. Plaintiff's date of birth is October 12, 1973, and he was 39 years old as of the alleged disability onset date. AR 422.

The agency rejected Plaintiff's claim on December 22, 2015, and again upon reconsideration on March 1, 2016. AR 81, 90. On March 16, 2016, Plaintiff filed a request for a hearing in front of an Administrative Law Judge (ALJ). AR 96. A hearing was held on May 1, 2017, and on May 16, 2017, ALJ Mark Triplett denied Plaintiff's application. AR 17-28, 32. In his decision, the ALJ found Plaintiff severely limited by a hernia and chronic liver disease, but also found Plaintiff only minimally affected by hepatitis C, hypertension, and obesity. AR 22-23. Plaintiff requested review from the Appeals Council, which was denied on September 22, 2017, making the decision from the ALJ the final decision of the agency. AR 1. Plaintiff then appealed the decision to the District Court, which adopted the Findings and Recommendation of Magistrate Judge John Jelderks to remand the case for further proceedings on September 20, 2019. AR 565-66, 585-86.

Plaintiff's condition worsened after remand. The ALJ held an initial supplemental hearing on September 9, 2020, but the introduction of additional medical evidence soon thereafter resulted in a second supplemental hearing on March 24, 2021. AR 457, 517. The ALJ again denied Plaintiff's claim on April 1, 2021.[2] AR 423. After 61 days, the ALJ's decision became administratively final. Plaintiff now seeks judicial review of that decision.

---

[2] Two copies of the ALJ's decision appear in the record. One is dated April 1, 2021, and the other is dated April 6, 2021.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of

work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001); *Yuckert*, 482 U.S. at 140-42.

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C.  The ALJ's Decision

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 24, 2015. AR 414. At step two, the ALJ found several impairments severely limited Plaintiff: hernia; chronic liver disease; right knee degenerative joint disease with meniscal tear; diabetes mellitus; drug abuse/dependence—alcohol and methamphetamine; and hepatitis C. *Id.* The ALJ also found Plaintiff's depression, anxiety, hypertension, and obesity did not cause any significant work-related limitation and, thus, were non-severe. *Id.* At step three, the ALJ did not find any impairment to meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 415. The ALJ considered listings 1.02 (degenerative joint disease), 5.05 (chronic liver disease), and 5.06 (Crohn's Disease), as well as listings 12.04 and 12.06 (social limitations due to substance abuse and mental impairments) but found no instance in which Plaintiff met the necessary standard. AR 415-16.

Before proceeding to step four, the ALJ considered Plaintiff's RFC. AR 416. In determining the RFC, the ALJ mostly discounted the evidence and testimony presented during Plaintiff's first hearing in 2017 because of how much his conditioned had worsened in the subsequent four years. AR 417-18. Instead, Plaintiff's second and third hearings, as well as more contemporary medical opinions, made up the basis of the RFC. AR 417-21. The new RFC captured Plaintiff's diminished health since the initial ruling, reducing his RFC from light to sedentary work under 20 C.F.R. § 416.967(a), with the following exceptions:

> [T]he claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to pulmonary irritants, and occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The claimant requires restroom access within [five] minutes walking time from the workstation. The claimant can tolerate occasional contacts with coworkers and supervisors, but cannot engage in team-based work activity. The

claimant requires the use of a cane held in the right, upper
extremity when ambulating greater than 100 feet.

AR 416-17.

At step four, the ALJ found Plaintiff had no past relevant work. AR 422. At step five, the

ALJ considered Plaintiff's age, education, work experience, and RFC and determined that there

were jobs in significant numbers Plaintiff could perform in the national economy. *Id*. The ALJ's

decision was based on the testimony of two Vocational Experts (VEs), Michael Swanson and

Mark Harrington, who testified at Plaintiff's September 9, 2020, and March 24, 2021, hearings

respectively. AR 457, 517. Using Mr. Swanson's recommendation, the ALJ determined Plaintiff

could perform the following three jobs: document preparer, charge account clerk, and final

assembler. AR 423. The ALJ then found Plaintiff was not disabled under the Social Security Act.

*Id*.

## DISCUSSION

Plaintiff contends that the ALJ erred in rejecting the medical opinions of both the

examining physician, Raymond Nolan, M.D., and the treating physician, Samir Ale, M.D.

**A. Medical Opinion Evidence**

**1. Standards of Review for Applications before March 2017**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r. of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir.

2008). The Ninth Circuit and the Commissioner[3] distinguish between the opinions of three types

of physicians: treating physicians, examining physicians, and non-examining physicians.

---

[3] Because Plaintiff filed his application before March 17, 2017, the application is
governed by 20 C.F.R. § 416.927, and the revised rules relating to the consideration of medical
opinion testimony do not apply.

*Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 416.927(c)(1)-(2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; see also 20 C.F.R. § 416.927(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons…supported by *substantial record evidence*" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (quoting *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)) (emphasis in original).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1012-13; *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 2.  Raymond Nolan, M.D.

Plaintiff challenges the ALJ's consideration of certain opinions offered by Dr. Nolan in 2020. Plaintiff contends that the ALJ only had to provide specific, legitimate reasons to discount Dr. Nolan's testimony because medical opinions in 2015 contradict Dr. Nolan's opinions. The ALJ, however, states in his decision that the 2015 opinions are "no longer consistent with the record as a whole as to the most the claimant would be capable of during the relevant period." AR 420. Because the ALJ functionally removed the 2015 medical opinions from the record, no medical opinions remain to contradict Dr. Nolan's findings. Thus, the ALJ needed to present "clear and convincing" reasons for discrediting Dr. Nolan's findings. For the reasons stated below, the ALJ did not present clear and convincing reasons to discount the opinions Plaintiff challenges, nor even specific and legitimate reasons if that were the appropriate standard.

Plaintiff first challenges the ALJ's discounting of Dr. Nolan's opinion regarding the total time that Plaintiff could sit, stand, and walk in combination in a workday. Dr. Nolan performed a physical examination of Plaintiff on September 26, 2020. AR 1110. In his report, Dr. Nolan provided a narrative evaluation of Plaintiff's conditions and limitations. AR 1110-12. He also filled out a standard form. AR 1113-18. Along with the physical exam, Dr. Nolan reviewed at least some of Plaintiff's previous medical records, although his summary is not entirely clear on the extent of the records reviewed. AR 1110. In Dr. Nolan's narrative summary, he described that Plaintiff could "sit for at least six hours in an eight hour day and stand for up to one hour and walk less than an hour in an eight hour day." AR 1112. In the standardized check-box form, Dr. Nolan checked the box for "6" hours for sitting, the box for "1" hour for standing, and the box for "1" hour for walking in an eight-hour day. AR 1114. He did not specifically indicate that walking was less than one hour in this form (such as by listing number of minutes versus one hour) or that the total time for all three was less than eight hours (which is asked in a separate question). The ALJ, however, did not interpret these two opinions as internally inconsistent and the Court accepts Dr. Nolan's more specific narrative opinion, which is the approach taken by the ALJ.

The ALJ gave "some weight" to Dr. Nolan's opinion. Rather than assess the credibility of Dr. Nolan's opinion in its entirety, the ALJ's decision addressed each opined limitation in turn, separately accepting, rejecting, or modifying the limitations in each specific opinion by Dr. Nolan. The ALJ cited three reasons for discounting Dr. Nolan's sit-stand-walk limitations. All three reasons were treated as internal inconsistencies that "detract from the supportability of [Dr. Nolan's] opinion." AR 421.

First, the ALJ discounted Dr. Nolan's sit-stand-walk limitations because, per the ALJ, Dr. Nolan did not state what impairment caused the limitations. As Plaintiff points out, the ALJ misunderstood the record in reaching that conclusion. On the check-box form, Dr. Nolan checked boxes for the longest amount of time he believed Plaintiff could stand, sit, and walk without interruption and in a total workday. AR 1114. Immediately following the boxes, the form asks: "If the total time for sitting, standing, and walking does not equal or exceed [eight] hours, what activity is the individual performing for the rest of the [eight] hours?" *Id.* Dr. Nolan did not answer the question asked but wrote "degenerative arthritis knees." *Id.* On the previous page, Dr. Nolan had filled out two charts related to Plaintiff's lifting and carrying limitations, which were immediately followed by a question asking what impairment caused the limitations. AR 1113. Dr. Nolan likely assumed the same question would be asked after each set of limitations and answered accordingly. The ALJ erred in stating Dr. Nolan did not explain which impairment was behind the sit-stand-walk limitation because Dr. Nolan did so right below his answers to those limitations, albeit as an answer to a question that asked for a different piece of information. It is clear, however, what Dr. Nolan was referencing in his answer, and that his immediately preceding sit-stand-walk functional limitations were based on Plaintiff's arthritis in his knees.

Second, the ALJ found that according to Dr. Nolan, Plaintiff had "full strength in his upper and lower extremities," which the ALJ concluded "call[ed] into question" the sit-stand-walk limitations.[4] AR 421. This reasoning by the ALJ is neither "clear and convincing" nor "specific and legitimate." The "full strength" determination for Plaintiff's lower extremities

---

[4] The ALJ does not state why he included Plaintiff's upper extremities when discounting the Plaintiff's ability to sit, stand, or walk.

depended solely on a muscle test performed during Plaintiff's physical examination with Dr.
Nolan. AR 421, 1112. The ALJ offers no explanation or reasoning as to why the strength of
Plaintiff's muscles should discount Dr. Nolan's finding that Plaintiff cannot sit-stand-walk for a
total of eight hours at a time. That finding, as discussed above, was not based on any muscular
impairment in Plaintiff's legs but was based on Plaintiff's arthritis in his knees. The rest of the
medical record supports Dr. Nolan's opinion that Plaintiff was limited due to right knee pain. *See*
AR 399; 973 ("patient's activities of daily living are severely inhibited by right knee pain"); 976
("symptoms occur constantly"); 1057 ("the patient continues to have significant right knee
pain"); 1092 ("the condition is moderate in severity and worsening"); 1226 ("Gait is much worse
because of right knee pain"). Because the ALJ simply stated in one sentence, without further
explanation, that the muscle tests "question" the sit-stand-walk limitations, the ALJ failed to
provide substantial evidence supporting the finding that Plaintiff's muscle strength was
inconsistent with the limitations resulting from the degenerative arthritis in Plaintiff's right knee.

Finally, the ALJ stated that Dr. Nolan's opinion lacked credibility because he did not
"advise as to what records he was able to review before offering his opinion." AR 421. Plaintiff
contends Dr. Nolan did signify what records were reviewed on the first page of his opinion by
referring to lab results from "June of 2020." Plaintiff is correct.[5] Only two sets of medical
records existed from June 2020, and one of those, from Plaintiff's treating physician Dr. Ale,
contain test results matching those in Dr. Nolan's report. *Compare* AR 1057-68, and AR 1108.
Although Dr. Nolan does not specify in his report whether he looked at any other available
medical records or opinions, his failure to do so should not discount from his opinion.

---

[5] Dr. Nolan also stated that he read Plaintiff "the list of medications included in outside
records from June of this year." AR 1110.

*See Mike S. v. Berryhill*, 2018 WL 5083888, at *4 (D. Or. Oct. 18, 2018) ("[T]he fact that a physician viewed only part of the record is not a reason, without more, to discount a physician's opinion."). At a minimum, Dr. Nolan reviewed medical records from Plaintiff's treating physician, and made statements to that effect on the first page of his evaluation before offering his opinion. AR 1110. The ALJ erred in stating Dr. Nolan failed advise what records were reviewed before offering his medical opinion.

The Commissioner defends the ALJ's decision by arguing other "inconsistencies" the ALJ provided for discounting other portions of Dr. Nolan's opinion. Plaintiff, however, only objects to the ALJ's rejection of Plaintiff's sit-stand-walk limitation opined by Dr. Nolan. The ALJ did not assess Dr. Nolan's overall opinion but provided specific reasons for rejecting specific limitations to which Dr. Nolan opined. The Court rejects the Commissioner's approach for two reasons. First, many of the "inconsistencies" the ALJ points out with respect to the other limitations are not borne out upon review of the record.[6] Second, because the ALJ crafted a

---

[6] The ALJ discounts Dr. Nolan's opinion that Plaintiff should limit pushing and pulling based on Plaintiff's purported testimony that his abdominal problems only inhibit his ability to lift. AR 421. That, however, is a mischaracterization of the record. At his hearing, Plaintiff was specifically asked by the ALJ how Plaintiff's hernia affected his lifting. *See* AR 476 ("how . . . does the hernia affect your ability to lift up things?" . . . . "Do you have problems . . . lifting up objects because of the hernia?"). The ALJ did not ask about pushing and pulling. Thus, Plaintiff's testimony responding to questions about lifting limitations does not conflict with Dr. Nolan's opinion about pushing and pulling limitations. The ALJ also adjusted several postural limitations from Dr. Nolan's report in creating the RFC. For example, Dr. Nolan opined Plaintiff could never stoop, kneel, crouch, or crawl, but could balance frequently on account of a balancing test performed during the physical exam. AR 1116. On a different page, Dr. Nolan stated that Plaintiff could shop, use public transportation, climb a few steps, and care for personal hygiene. AR 1118. The ALJ stated these two findings were at odds, but decided the best option was to average out the postural limitations. The ALJ concluded in the RFC that Plaintiff could "occasionally balance, stoop, kneel, crouch, and crawl." AR 416. Neither the ALJ nor the Commissioner gives an explanation for why Dr. Nolan's opinion of Plaintiff's ability to perform minimal basic daily living activities was inconsistent with his postural limitations (shopping, taking care of personal hygiene, and taking public transportation do not necessarily require stooping, kneeling, crouching, or crawling). Nor did the ALJ or the Commissioner explain how

decision that evaluated each of Dr. Nolan's assessed limitations individually, providing reasons specific to each limitation, it is proper for the Court to evaluate only the reasons given by the ALJ for the challenged limitation. Although, per *Orn*, a reviewing court should consider the *record* as a whole, 495 F.3d at 630, it is not compelled to treat the ALJ's assessment of an examining physician's opinion as a whole if that is not how the ALJ assessed the opinion. Taking the record as a whole, the ALJ improperly discounted Dr. Nolan's opinion that Plaintiff could not sit, stand, and walk in combination for eight hours in a workday because the ALJ's rationales were either unsupported by substantial evidence[7] or factually unfounded.

### 3. Dr. Samir Ale

Dr. Ale was Plaintiff's treating physician. At issue is Dr. Ale's "Treating Source Statement" from August 6, 2020. AR 1100. In the statement, Dr. Ale listed Plaintiff's diagnoses as liver cirrhosis, chronic hepatitis C, ventral hernia, diabetes mellitus II, hypertension, Crohn's Disease, and bilateral knee arthritis. *Id.* As a result of Plaintiff's chronic pain, Dr. Ale opined Plaintiff must lie down to rest "multiple times a day." AR 1101. Dr. Ale also opined that Plaintiff would be unable to maintain a normal work schedule[8] more than four days per month, the maximum amount offered on the form. AR 1102. The ALJ specifically identified that Dr. Ale assessed that Plaintiff "would need to lie down multiple times a day for chronic pain issues and

---

the purported contradiction reasonably caused the ALJ to upgrade Plaintiff's ability to crouch, kneel, stoop, and crawl while also downgrading Plaintiff's ability to balance.

[7] Because the ALJ fails to meet either the "specific and legitimate" or the "clear and convincing" standard, it is unnecessary to determine whether the 2015 medical opinions contradict Dr. Nolan's opinion, or if those records should be considered given the ALJ's discounting of their relevance.

[8] A normal work schedule was defined on the form as "an eight-hour day, five days per week with normal breaks that would usually consist of a morning and an afternoon break of approximately 10-15 minutes in duration and a lunch break of one-half hour to one hour."

would have significant absences from work per month." AR 421. The ALJ stated that he gave little weight to these "ultimate limitations assessed, which are inherently disabling." *Id.*

### a.  Plaintiff's need to lie down

The ALJ rejected Dr. Ale's opinion that Plaintiff would need to lie down multiple times per day as conflicting with evidence in the record. First, the ALJ cited Plaintiff's testimony stating he only "tries" to elevate his legs as revealing that he does not necessarily lie down to rest every day. A medical opinion's inconsistency with either a Plaintiff's testimony or daily living activities can constitute a "specific and legitimate" reason for discounting the opinion. *Andrews*, 53 F.3d at 1042-43. The ALJ's first reason for rejecting Dr. Ale's opinion that Plaintiff must lie down multiple times a day is not a specific, legitimate reason. The cited testimony is as follows:

> Q: Do you have swelling right now in any parts of your body
>
> A: Yeah
>
> * * *
>
> Q: Yeah, well why don't you describe where it's at for us
>
> A: All over. I got the swelling from my upper thighs all the way to my toes
>
> Q: Okay. Do you ever have to elevate your legs?
>
> A: Yeah, I try to, but how am I supposed to do that[?] I mean, it's hard. It's hard to pick them up just to take a step. The left one's even harder.

AR 483-84.

Plaintiff contends this exchange shows his answer does not preclude that he elevates his legs while lying down, but only specifies that he has trouble lifting his legs while walking. The Commissioner argues that, based on Plaintiff's statement "Yeah, I try, but how am I supposed to do that?" the ALJ "rationally determined that Plaintiff did not lie down during the day." The

Court disagrees that the ALJ's determination was a rational interpretation of the testimony. Plaintiff construed the ALJ's questions as raising Plaintiff's legs in walking.

Further, even if Plaintiff construed the ALJ's question as Plaintiff had to elevate his legs to address his swelling (the context of the conversation, which was about the swelling in Plaintiff's legs), the ALJ's reasoning is still too attenuated from the underlying impairment involved in Dr. Ale's opinion to discount that opinion. *See Moon v. Colvin*, 139 F. Supp. 3d 1211, 1219 (D. Or. 2015) (finding the relationship between Plaintiff's cognitive function "quite attenuated" from her impairments—anxiety disorder, PTSD, depression—and therefore not in conflict with Plaintiff's testimony). Elevating one's legs to address swelling is different than simply lying down to alleviate pain, which may not include elevating one's legs at all (a person can lay down without elevating one's legs). Dr. Ale did not opine that Plaintiff had to lie down and elevate his legs multiple times a day to relieve swelling. Dr. Ale simply opined that Plaintiff had to lie down to relieve the chronic pain Plaintiff experiences in his abdomen and knees. AR 1101. Thus, the ALJ erred in relying on Plaintiff's testimony about elevating his legs to discount this opinion by Dr. Ale.

Second, the ALJ questioned Dr. Ale's opinion on Plaintiff's need to lie down during the day on account of Plaintiff's testimony that he did not take medications for his pain. AR 421. The Commissioner argues the ALJ "reasonably concluded" Plaintiff would have taken pain medication if the chronic pain was as bad as Plaintiff and Dr. Ale opine.

"Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284 (concluding that the claimant had a "good reason" for not taking pain medication because she could not afford it); *see also Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984)

(concluding that the ALJ erred in discrediting the plaintiff's pain for failure to take pain medication because the doctor "specifically recommended claimant continue on no medication" due to side effects). Plaintiff's testimony, as well as the record, offer many reasons why Plaintiff does not take medication for his pain.

> Q: Okay. I was also going to ask, as far as some of the pain that you experience. What are you doing right now to relieve pain symptoms?
>
> A: I am not using drugs no more. I'll tell you that much. I mean, with this Corona thing, I couldn't even get it if I wanted to. It's just hard. I mean, they don't give me any pain medication, so I just got to deal with it.

AR 485.

Plaintiff reiterated in his Critical/Dire Need Request that he took nothing "for any of my pains due to all the new laws and my past history with street drugs and pills." AR 607. Medical reports from late 2019 reveal Plaintiff did occasionally take over-the-counter remedies like ibuprofen, but records from 2020 show that he did not do so consistently because of the cost. AR 941, 973, 1224. Plaintiff was then prescribed pain medications in the period between his first and second supplemental hearings. AR 1236. Medical records from December 28, 2020, suggest Plaintiff was actively taking NSAIDs, but needed to stop their use to avoid further exacerbating his other impairments. AR 1241.

The medical record reflects Plaintiff's reasons for not treating his chronic pain with medication, including cost, lack of prescriptions, history with addiction, and potential side effects. The ALJ's conclusion that Plaintiff's testimony on his non-use of pain medication undermined the credibility of Dr. Ale's opinion that Plaintiff must lie down multiple times a day to quell his chronic pain was not reasonable or supported by substantial evidence in the record. The ALJ's discounting of Dr. Ale's opinion was not supported by substantial evidence because it

did not "[set] out a detailed and thorough summary of the facts and conflicting clinical evidence," but instead only cited one decontextualized, abridged quote from Plaintiff's testimony without further explanation or support from the medical record. *Reddick*, 157 F.3d at 725.

Third, the ALJ discounted Dr. Ale's opinion because "per Exhibit 20F [Dr. Nolan's opinion] he [Plaintiff] is able to keep up a fairly extensive level of activity, considering his impairments." AR 421. The ALJ did not explain how Dr. Nolan's opinion contradicts Dr. Ale's opinion. Nor did the ALJ specifically cite any section of Dr. Nolan's opinion or explain what "fairly extensive level of activity" the ALJ found contradictory to Dr. Ale's opinion regarding Plaintiff's need to lie down. For example, Dr. Nolan opined that Plaintiff could perform basic personal hygiene, shop, use public transportation, prepare a simple meal, and climb a few steps with the use of a handrail. AR 1118. None of that conflicts with Dr. Ale's opinion about Plaintiff's need to lie down. Dr. Nolan also opined that Plaintiff could sit continuously for two hours, stand for 20 minutes and walk for 10 minutes. AR 1114. That does not conflict with Dr. Ale's opinion that Plaintiff would need to rest throughout the day. Without further explanation of the ALJ's reasoning, there is no apparent conflict, and certainly not one supporting the rejection of a treating physician's opinion in favor of an examining physician.

### b. Plaintiff's Absences

The ALJ grouped Dr. Ale's opinion that Plaintiff would require multiple absences per month with Dr. Ale's opinion that Plaintiff would have to lie down multiple times per day as ultimate limitations that were inherently disabling and that the ALJ gave little weight. The reasons given by the ALJ, however, were focused solely on the opinion that Plaintiff would need to lie down. The ALJ did not provide any explanation for his rejection of Dr. Ale's opinion that Plaintiff would have multiple absences or further discuss that particular opinion by Dr. Ale.

An ALJ's rejection of a medical opinion is erroneous when the opinion is merely ignored. *Garrison¸* 759 F.3d at 1012-13. The ALJ erred in rejecting this limitation.[9]

## B. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

---

[9] To the extent the ALJ intended to rely on the same reasons he rejected Dr. Ale's opinion that Plaintiff would need to lie down throughout the day, the Court has rejected that reasoning.

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at

408.

Considering the record as a whole, there are no ambiguities or conflicts relating to

Dr. Ale's opinion that Plaintiff must lie down multiple times a day. As discussed, this opinion

does not conflict with the other opinions in the record or the medical evidence. Absent any

ambiguity or conflict, Dr. Ale's opinion that Plaintiff must lie down multiple times a day is

credited as true.

Neither the ALJ nor Plaintiff's attorney asked the VEs whether the lying down limitation,

taken as true, would be work preclusive. The ALJ, however, described this limitation as

"inherently disabling." AR 421. The Court agrees.

> [I]n the unusual case in which it is clear from the record that the
> claimant is unable to perform gainful employment in the national
> economy, even though the vocational expert did not address the
> precise work limitations established by the improperly discredited
> testimony, remand for an immediate award of benefits is
> appropriate.

*Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

As acknowledged by the ALJ, it is clear that Plaintiff's lying down limitation prevents

him from being able to perform gainful employment. Available VE testimony described in other

court opinions involving claimants limited to sedentary work support this conclusion. *See*

*Burnham v. Berryhill*, 2019 WL 1332397, at *6 (N.D. Cal. Mar. 25, 2019) (VE opined the need

to lie down for fifteen minutes every two hours would eliminate all employment positions);

*Hilsendager v. Comm'r of Soc. Sec. Admin.*, 2016 WL 544495, at *9 (D. Or. Feb. 10, 2016)

("The VE also testified that no alternate jobs exist[] that permit an employee to lie down outside

of normal break times."); *Paseman v. Astrue*, 2013 WL 1826295, at *9 (D. Or. Apr. 30, 2013)

(remanding for benefits because "the VE testified Plaintiff would be unemployable if she needed

to lie down on breaks"); *Ballard v. Astrue*, 2009 WL 3126282, at *11 (E.D. Cal. Sept. 23, 2009) (VE testified that the need to lie down for a sedentary worker "was an issue because 'there's no job out there where he's going to be able to go and lay down'"); *Durham v. Apfel*, 1999 WL 778243, at *23 (D. Or. Sept. 22, 1999) (remanding for benefits because of "VE testimony that a need to lie down periodically throughout the day would make a person unemployable"); *Kriner v. Comm'r of Soc. Sec. Admin.*, 1999 WL 947847, at *4 (D. Or. Oct. 9, 1999) (finding a remand for benefits warranted because the VE testified a need to lie down in the morning and afternoon precluded competitive employment). Further proceedings are unnecessary because VEs consistently state a lying down limitation would be work preclusive. The Court sees no reason to extend the proceedings so that yet another VE can testify to the same effect. The Court is convinced this is the "unusual case" where a remand for benefits is proper despite the lack of direct VE testimony speaking to Plaintiff's specific limitation.

Supporting the decision to remand for benefits based on composite evidence is the fact that the Commissioner has now failed to meet the burden at step five twice. This Court has held that "allowing the Commissioner a third opportunity to try to meet her burden at step five would create the very '"heads we win; tails, let's play again system" of disability benefits adjudication' that the Ninth Circuit has repeatedly cautioned against." *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1165-66 (D. Or. 2015) (quoting *Benecke*, 379 F.3d at 595). Here, the ALJ knew of the lying down limitation before either of the supplemental hearings, but still failed to properly discount the opinion or include it the hypotheticals given to the VEs, leaving a gap in the VE testimony. The Court has chosen to fill the gap with the conclusive evidence available because the Commissioner should not receive a third opportunity to deny benefits, nor should Plaintiff be

forced to suffer further delay in receiving benefits, when the answer to an unasked, dispositive question is readily available.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 8th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge